Mahmoud **FUSTOK**, Plaintiff,

v.

**CONTICOMMODITY SERVICES, INC.,** Conticapital Management, Inc., Continental Grain Company, **Walter M. Goldschmidt, Norton Waltuch, Tom Waldeck and Ivan Auer,** Defendants and Third–Party Plaintiffs,

v.

Naji R. **NAHAS,** Third Party Defendant.

No. 82 Civ. 1538 (MEL).

United States District Court, S.D. New York.

Oct. 20, 1988.

As Amended Nov. 9, 1988.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for ContiCommodity Services, Inc.; Cameron Clark, Richard A. Rosen, Janet Kleeman (Admitted to New York Bar but not in Southern District), of counsel.

Breed, Abbott & Morgan, New York City, for Naji R. Nahas; James D. Zirin, of counsel.

LASKER, District Judge.

This motion arises out of the ongoing and complicated lawsuits stemming from the rise and subsequent crash in the price of silver in the fall of 1979 and winter of 1980. In 1982, Mahmoud Fustok, a businessman and investor, sued ContiCommodity Services, Inc., a commodities broker, and several of its then officers ("Conti"), charging them with unauthorized trading, conversion, and violations of the Commodities Exchange Act. Conti, in turn, filed a third-party complaint against Naji R. Nahas, a Brazilian citizen, demanding a judgment against him based on an indemnification agreement should Conti be found liable to Fustok for a transaction involving 182 silver futures contracts ("182 contracts"). In 1985, a default judgment was entered against Nahas, which was amended in 1986, after Fustok and Conti arrived at a settlement, to specify the sum to which Conti was entitled based on its indemnification agreement with Nahas.

Nahas moves under Fed.R.Civ.P. 60(b)(4) and 60(b)(6) to vacate the amended default judgment against him. He claims that he was not given notice or an opportunity to be heard prior to its entry and that the judgment provides relief not prayed for in the complaint, both in violation of his right to due process. Moreover, Nahas maintains that vacatur is necessary in the interest of justice. In response, Conti contends 1) that Nahas' due process rights were not violated and that accordingly he is not entitled to relief under Rule 60(b)(4) and 2) that Nahas has failed to prove the extraordinary circumstances necessary to prevail under Rule 60(b)(6). Nahas' motion is denied.

I.

The relevant facts are not disputed. In 1980, after the crash of the silver market, Nahas' accounts at Conti had huge deficits; a portion of the deficit was attributable to margin calls for 182 silver futures contracts that were in the account of Mahmoud Fustok, but for which Nahas assumed responsibility.

In May of 1980, Conti and Nahas reached an agreement concerning the deficits (the "Closing Agreement"). Paragraph 5 of their Closing Agreement specifically addressed the 182 contracts and provided in relevant part:

[N]ahas will indemnify and hold harmless each of the Indemnified Parties from and against any and all losses, claims, demands, liabilities, actions or causes of action, assessments, damages, deficiencies, costs and expenses (including, without limitations, interest, penalties and attorneys' fees and expenses) asserted against, resulting to or imposed upon or incurred by any of the Indemnified Parties, directly or indirectly, by reason of, arising out of, or due to any claims whatsoever made by or on behalf of Fustok in respect of said contracts.[1]

Paragraph 7.2, also relevant to the question of indemnity, stated in part:

Whenever pursuant to this Agreement one party (the "indemnifying party") may be liable to indemnify, defend or hold harmless any other party (the "indemnified party") ..., the indemnified party shall, promptly after any such claim shall be asserted, give notice to the indemnifying party thereof, and the indemnifying party shall have the right to participate in the contest and defense of any such claim at his or its sole cost and expense. No settlement or compromise of any such claim shall be agreed to without the consent of the indemnifying party, which consent shall not be unreasonably withheld.[2]

After Fustok filed his complaint against Conti in 1982, Conti served Nahas with its third-party claim for indemnification in accordance with the Federal Rules of Civil

1. Affidavit of James D. Zirin ("Zirin Affidavit") (July 8, 1988), Exhibit C, Closing Agreement Between Naji R. Nahas and ContiCommodity Services, Inc., dated May 6, 1980.

2. *Id.*

Procedure by sending the summons and complaint to him in Brazil by certified mail and by satisfying service of process rules in France, where Nahas also spent time.

In 1985, Conti moved for entry of a default judgment against Nahas, who, although represented by counsel, had not appeared in the case. Conti served the motion on Nahas in Brazil and on his counsel in New York.[3] On September 12, 1985, a default judgment was entered against Nahas which stated that Nahas would be liable "for the full amount of any damages that may be recovered ... by plaintiff Fustok with respect to the 182 silver futures contracts referred to in the May 6, 1980 agreement...."[4] On March 17, 1986, at the close of the plaintiff's case, Fustok and Conti entered into a settlement agreement ("Settlement Agreement"), which attributed a portion of the total figure to the 182 contracts and the remainder to the claims "relating to the purchase and subsequent liquidation of 79 [London Metals Exchange] silver forward contracts."[5]

On July 15, 1986, Conti moved for an order amending the default judgment to specify its sum, namely to provide a judgment in the amount of the portion of the settlement sum attributed to the 182 contracts, plus attorney's fees, "together with interest from [the date of the default judgment], and for such other and further relief as the Court may deem just and proper."[6] The judgment was also amended to reflect that Nahas had been served a copy of the summons and third-party complaint pursuant to Brazilian law, a process completed after entry of the initial default judgment and undertaken on the advice that this form of service was required for enforcement of the judgment in Brazil.

The motion was served on Nahas' New York counsel, who in letters of July 25 and 31, 1986, objected on several grounds to entry of the amended default judgment. First, Nahas argued that the default judgment impermissibly attempted to provide greater relief than that prayed for in the complaint, because it provided for recovery for sums paid in settlement rather than sums adjudged against Conti. Second, Nahas contended that he was entitled to a hearing to contest the measure of damages, particularly given possible collusion in the settlement. Both letters stated that "[t]his letter shall not constitute a general appearance by our firm in this action."[7] Conti urged the court to disregard the comments and objections of Nahas' counsel, given his nonappearance.[8]

The amended judgment was signed on August 1, 1986 and filed on January 7, 1987. Conti subsequently initiated homologation proceedings in Brazil necessary to execute the judgment; those proceedings were concluded as of June 29, 1988.[9] Thereafter, in July 1988, Nahas appeared in this action for the first time and submitted to the jurisdiction of this court.

## II.

### A.

Nahas contends that the amended judgment must be vacated pursuant to Fed.R. Civ.P. 60(b)(4), which authorizes the court to relieve a party from a final judgment if the judgment is void.[10] *See Textile Bank-*

---

3. Affidavit of Cameron Clark ("Clark Affidavit"), ¶ 9 (July 12, 1988).

4. Clark Affidavit, Exhibit 5, Default Judgment.

5. Zirin Affidavit, Exhibit E, Settlement Agreement, ¶ 5.

6. Clark Affidavit, Exhibit 1, Notice of Motion to Amend Default Judgment.

7. Zirin Affidavit, Exhibits H and J, Letters from James D. Zirin to Honorable Morris E. Lasker, dated July 25 and July 31, 1986, respectively.

8. Zirin Affidavit, Exhibit I, Letter from Cameron Clark to Honorable Morris E. Lasker, dated July 29, 1986. The record in this case does not indicate whether the arguments of Nahas' counsel were disregarded because they were made on behalf of a non-appearing party or because they were found to lack merit.

9. Clark Affidavit, Exhibit 10, Letter from Amilcar Motta and Luis Roberto Barroso to Cameron Clark (June 30, 1988).

10. His motion, although made two years after entry of the amended default judgment, is timely under Rule 60(b)(4). *See Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257, 260 (10th Cir.1971) (if judgment is a nullity, motion under Rule 60(b) need not be filed within any particular time

*ing Co. v. Rentschler,* 657 F.2d 844, 850 (7th Cir.1981) (court must grant appropriate Rule 60(b) relief if underlying judgment is void because entry of order violated due process rights); *Triad Energy Corp. v. McNell,* 110 F.R.D. 382, 385 (S.D.N.Y.1986) (court lacks discretion on motion to vacate default judgment if judgment is void because entry violated due process).

Nahas contends that the judgment was entered in violation of his due process rights because: 1) he did not and was not given an opportunity to consent to the settlement between Fustok and Conti, 2) there was no hearing to evaluate the reasonableness of the settlement amount, and 3) the relief provided in the default judgment differs from that prayed for in the third-party complaint. I conclude that service of the motion provided Nahas with the notice and opportunity to be heard required to ensure due process, that Nahas waived his rights by failing to appear, and that he cannot prevail on the merits.

■ First, there is no dispute that Nahas was served with both the motions for a default judgment and an amended default judgment. Thus, the "elementary and fundamental requirement of due process" that Nahas be apprised "of the pendency of the action and afford[ed] ... an opportunity to present [his] objections" was satisfied. *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). Because the notice preceded the deprivation, Nahas' right to be heard was meaningful; he was "informed that the matter [was] pending and [could] choose for himself whether to appear or default, acquiesce or contest." *Id.*

Moreover, the notice of the motion to amend the default judgment, accompanied with the relevant settlement terms, provided Nahas an opportunity to consent, albeit after Conti had settled with Fustok, but on a basis which would have enabled this court to protect him against liability for indemnity if his objections prevailed. By failing to appear, Nahas chose not to exercise his right to be heard; in essence, he waived his right to object to the terms of the settlement. The objections of Nahas' counsel—in a case in which Nahas had declined to appear—were not sufficient to overcome this waiver.[11]

Even assuming that Nahas' letter objections were sufficient to constitute withholding consent under the indemnity agreement, Conti nevertheless prevails. For the reasons discussed below, Nahas' objections, construed as a refusal to consent, are unreasonable in violation of the Closing Agreement's terms that such consent is not to be "unreasonably withheld."

■ The testimony at trial and the affidavits supporting the motion for an amended default judgment established the fairness of the settlement figure attributed to the 182 contracts and provided sufficient support to make a hearing as to damages unnecessary. It is true that in the case at hand, the damages were neither liquidated nor capable of mathematical calculation and accordingly it could be argued that a hearing was necessary under the terms of Fed.R.Civ.P. 55(b)(2).[12] *Hunt v. Inter-*

---

limit); *Triad Energy Corp. v. McNell,* 110 F.R.D. 382, 385 (S.D.N.Y.1986) (movant may challenge void judgment under Rule 60(b)(4) at any time; reasonable time limitation does not apply); *Moore v. Positive Safety Mfg. Co.,* 107 F.R.D. 49, 50 (E.D.Pa.1985) (party's motion eight years after judgment made in reasonable time within meaning of Rule 60(b)(4)), *aff'd without opinion,* 787 F.2d 583 (3rd Cir.1986).

**11.** Rather, the fact that those arguments were made on Nahas' behalf suggests that Nahas' default was willful, a factor weighing against granting this motion. *Cf. Leab v. Streit,* 584 F.Supp. 748, 754 (S.D.N.Y.1984) (stating that Rule 60(b) motions generally to be evaluated by willfulness of default, merit of defense, and

prejudice to nondefaulting party were relief granted, criteria normally applied to Rule 60(b)(1)). Even Rule 55(c) motions to set aside an entry of default, which are evaluated under a less rigorous standard than Rule 60(b) motions, consider the willfulness of the default. *Meehan v. Snow,* 652 F.2d 274, 276–77 (2d Cir.1981); *Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 273 (D.C.Cir.1980).

**12.** Rule 55(b)(2) states in relevant part:

If, in order to enable the court to enter judgment ..., it is necessary ... to determine the amount of damages ..., the court may conduct such hearings or order such references as it deems necessary and proper....

*Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir.1985) (court may enter default judgment without hearing only if the amount claimed is liquidated or capable of mathematical calculation); *Dundee Cement Co. v. Howard Pipe & Concrete Prod.*, 722 F.2d 1319, 1323 (7th Cir.1983) (judgment by default may be entered without hearing only if amount is liquidated or ascertainable from definite figures in documentary evidence or detailed affidavits); *Davis v. National Mortgage Corp.*, 320 F.2d 90, 92 (2d Cir.1963) (stating in dicta that district court may not enter default judgment for unliquidated damages without first holding hearing).

■ However, although the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing. Rather, as was done in this case, the court may rely on detailed affidavits or documentary evidence (here supplemented by the court's personal knowledge of the facts, derived from presiding at trial) to evaluate the proposed sum. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979) (damages for default judgment should not have been awarded without hearing or a demonstration by detailed affidavits establishing necessary facts); *Transportes Aereos De Angola v. Jet Traders Inv. Corp.*, 624 F.Supp. 264, 266 (D.Del.1985) (holding damages for default could be established without hearing because party presented definite figures in documentary evidence or detailed affidavits); *Byrd v. Keene Corp.*, 104 F.R.D. 10 (E.D.Pa.1984) (stating court may hold hearing to determine appropriate amount of default judgment and holding such hearing necessary to evaluate reasonableness of default judgment against third-party defendant for portion of settlement between plaintiff and defendant arrived at without defaulting party's participation).

In the case at hand, the nature and monetary value of Fustok's claim with respect to the 182 contracts were fully aired at trial. The settlement between Fustok and Conti occurred after Fustok's case in chief had been presented. In essence, the question of damages was substantially tried. Fustok presented his case and his witnesses were subject to cross-examination, thereby distinguishing this case factually from those requiring a hearing to determine the damages award. In addition, Conti's papers accompanying the motion to amend the default include references to Fustok's evidence at trial as to the loss he suffered on liquidation of the 182 contracts, as well as an affidavit of a certified public accountant explaining what the prejudgment interest and interest would be for Fustok's net out-of-pocket loss on the transaction.[13] Even if the court had not had before it sufficient information making it unnecessary to hold a formal hearing to determine damages, as it did in this case, the failure to comply with Rule 55(b)(2) would not render the default judgment void because Nahas had notice of the default and an opportunity to appear. *Williams v. New Orleans Public Service, Inc.*, 728 F.2d 730, 735 (5th Cir.1984).

Nor was a hearing necessary to ensure that Fustok and Conti did not collude to arrive at the portion of the settlement attributed to the 182 contracts, because Nahas never presented any evidence to put the proposition in issue. Not only did he fail to provide the specificity necessary to prevail on such a claim, *American Metals Serv. Export v. Ahrens Aircraft*, 666 F.2d 718, 721 (1st Cir.1981) (evaluating on motion to vacate default judgment whether defense had been set out with the "required specificity"), but he does not even suggest a basis for concluding that collusion occurred.

In any event, the ultimate question is whether the settlement was reasonable, since the Nahas–Conti agreement provides that Nahas cannot unreasonably withhold his consent to a settlement between Conti and Fustok. In that regard, the trial and the affidavits submitted sufficed to enable

---

**13.** Clark Affidavit, Exhibit 1, Affidavit of Samuel P. Gunther accompanying motion for amended default judgment (June 20, 1986).

the court to evaluate the reasonableness of the damages specified in the amended default judgment without a hearing and to conclude that Nahas could not reasonably withhold his consent to the Conti–Fustok settlement.

■ Finally, Nahas argues that the judgment as amended is void because it provides relief "different in kind from ... that prayed for in the demand for judgment" in violation of Fed.R.Civ.P. 54(c). Nahas contends that, because the third-party complaint which formed the basis of the default judgment states that Nahas will indemnify Conti for "all sums that may be *adjudged*" against Conti by Fustok, he is not liable to Conti for damages arrived at in settlement. The argument is not persuasive. The amended default judgment in the case at hand satisfies the notice principles Rule 54(c) seeks to protect. *See Sylvan Beach v. Koch*, 140 F.2d 852, 862 (8th Cir.1944) (rule assures "essentials of due process and of fair play"). Moreover, as indicated below, the language of the settlement agreement suggests that the parties contemplated a resolution of the case predicated on a settlement.

Nahas was served with the motion to amend the default judgment, as discussed above, with sufficient time to be heard. He was also informed of the transaction upon which the claim was based and the nature of the relief sought, thereby distinguishing the case from *Compton v. Alton Steamship Co.*, 608 F.2d 96, 105–06 (4th Cir.1979), upon which Nahas relies. In *Compton*, the default judgment for statutory penalty wages was vacated, because the "bare reference in the prayer of the complaint to 'penalty wages,' without either any specification of the applicable statute or any allegations of fact bringing his case within the statute" did not give the party sufficient notice of the claim to satisfy Rule 54(c).

Finally, the third-party complaint, which incorporates by reference the Closing Agreement between Nahas and Conti, further weakens Nahas' argument. Paragraph 7.2 specifies that "[n]o settlement or compromise of any such claim shall be agreed to without the consent of the indemnifying party," thereby indicating that the parties did contemplate that indemnification might be based on settlement, rather than adjudication.

### B.

■ Finally, Nahas contends that the amended default judgment should be vacated pursuant to Fed.R.Civ.P. 60(b)(6), which provides for vacatur "for any other reason justifying relief from the operation of the judgment." Nahas argues that the judgment violates basic notions of fairness, because it is premised on a settlement to which he did not consent and includes an award of unreasonable attorney's fees. Nahas' argument that the settlement must be vacated because he did not consent cannot prevail for the reasons addressed above; moreover, to the extent he has already raised this argument as a basis for relief under Rule 60(b)(4), he cannot pursue it under Rule 60(b)(6). *In re Matter of Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir.1981). Nor can Nahas prevail on his argument that the attorney's fees award violates notions of fairness, because, for reasons stated below, the award was reasonable and sufficiently supported, and his argument was not made within a reasonable time as required by Rule 60(b). *See United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977) (relief under Rule 60(b)(6) is available "only when the movant acts in a timely fashion").

Nahas does not dispute that he is obliged under the Closing Agreement to pay attorney's fees, but he contends—for the first time—that the attorney's fees in the amended default judgment attributed to the 182 contracts are unreasonable and unsupported. The affidavit of Cameron Clark accompanying the motion for an amended default judgment represents that Conti spent over 42,000 hours defending against Fustok's case, 22.72 percent of which it attributed to defense of the claim arising

from the 182 contracts.[14] It also explains that the hours attributed to the 182 contracts "were estimated at the same percentage of the total hours spent by Conti's attorneys as the percentage that the damages Fustok claimed on that one transaction represent of Fustok's total claimed damages,"[15] a calculation Nahas argues is "prima facie unreasonable" because it is based on an estimate.

The question is whether that calculation was reasonable; I conclude that it was. As was true with the figure attributed to the 182 contracts, the trial and documents supporting the motion provided a sufficient basis upon which to evaluate the reasonableness of the sum. The extensive hours spent on the case were reasonable, in light of the 4 years from the time which the case was filed until it was settled and the several weeks during which it was tried. Moreover, the court, having heard Fustok's case in chief, could evaluate the propriety of the proportion of the total attorney's fees attributed to the 182 contracts.[16]

In addition, Nahas cannot prevail on this argument because it was neither raised in a reasonable time nor has he demonstrated "extraordinary circumstances" required by this Circuit to warrant relief under Rule 60(b)(6). *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir.1986); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). *See also Ruddies v. Auburn Spark Plug Co.*, 261 F.Supp. 648, 658 (S.D.N.Y.1966) (denying motion to vacate made over three years after entry of default judgment because not made in "reasonable time" where there was no dispute party was served and given notice of entry of default and because "extraordinary circumstances" required by Rule 60(b)(6) were not shown). In the case at hand, the interest in the finality of the judgment outweighs the reasons for delay, and thus the motion is not timely. *PRC*, 700 F.2d at 897. As was true of the defaulting party in *PRC*, Nahas has presented no persuasive reason justifying the delay of almost two years from the date the judgment was signed to the date on which it was challenged. In contrast, were the judgment vacated, Conti would likely need to repeat the homologation procedures,[17] lose its priority over later creditors of Nahas, and risk that Nahas might dispose of his assets prior to entry of another judgment.

Moreover, as indicated above, Nahas "has not presented us with any special circumstances which would justify the extraordinary relief provided for by Rule 60." *PRC*, 700 F.2d at 897. *See also Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986) (Rule 60(b)(6) properly invoked in cases of extraordinary circumstances or extreme and undue hardship) (citations omitted), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977) (same). Nahas has neither alleged nor demonstrated hardship approaching what has been found to justify Rule 60(b)(6) relief. In *Cirami*, the court held that the "constructive disappearance" of the moving party's counsel because of a psycholog-

---

**14.** Clark Affidavit, Exhibit 1, Affidavit of Cameron Clark accompanying motion for amended default judgment, ¶ 15 (July 15, 1986).

**15.** *Id.* at ¶ 12.

**16.** The attorney's fees were awarded pursuant to the settlement agreement. Accordingly, it is not evident that Conti was required to submit contemporaneous time records or detailed affidavits documenting the hours spent on the case, as is required for fees awarded pursuant to statute under the law of *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (affirming award of attorney's fees largely supported by substantial documentation estimating time spent by reconstructing records based on recollection and holding that "[h]ere-

after, any attorney ... who applies for court-ordered compensation ... must document the application with contemporaneous records"). *See Peter Fabrics, Inc. v. S.S. "Hermes"*, 765 F.2d 306, 319 (2d Cir.1985) (lodestar method not mandatorily applied where attorney's fees awarded pursuant to contract—for indemnity—rather than pursuant to statute). In this case, the court can evaluate, without contemporaneous documentation, whether the hours were "appropriate for the scope and complexity of the particular litigation." *Carey*, 711 F.2d at 1146.

**17.** Affidavit of Luis Roberto Barroso, July 29, 1988.

ical disorder, despite the party's repeated contact with counsel to ensure that he was being adequately represented, established extraordinary circumstances warranting relief. *Id.* at 34. In *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 1099 (1949), the court held that the plaintiff was entitled to relief under Rule 60(b)(6) although the motion was made four years after the default judgment; the plaintiff showed that he failed to defend denaturalization charges because he was incarcerated, without funds to hire a lawyer, and absorbed with defense of criminal charges against him. In this case, the "[p]urported deficiencies in the amount of and procedures for attorneys fee awards clearly do not constitute a ... hardship that cries out for the unusual remedy ... under Rule 60(b)(6)." *O'Grady v. Secretary of HHS*, 661 F.Supp. 1030, 1034 (E.D.N.Y.1987) (holding challenge to fee award decision and its apportionment provided a basis in part for relief under Rule 60(b)(1) but not under Rule 60(b)(6)). Nahas has put forward no reasons justifying his failure to raise earlier, either prior to or more promptly after entry of the amended default judgment, the arguments advanced in this motion. Like the party in *Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50, 53 (S.D.N.Y.1986), Nahas appears to "seek relief [under Rule 60(b)(6) ] from a tactical decision," and like the *Wagner* party, he cannot prevail. Nahas has not shown a sufficient basis for relief from the amended default judgment pursuant to Rule 60(b)(6). *Cf. PRC Harris, Inc. v. Boeing Co.*, 700 F.2d at 897 (holding Harris had not presented special circumstances justifying extraordinary relief of Rule 60(b)(6) where his delay resulted from failure to understand Rule 41(b)).

\*　　\*　　\*

■ Conti's request that it be awarded attorney's fees as a sanction pursuant to Rule 11 is denied, as is Nahas's request for sanctions against Conti. Under Rule 11, "sanctions *must* be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims were 'warranted by existing law or a good faith argument for the extension,

modification, or reversal of existing law.' " *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1288 (2d Cir.1986). Sanctions against Conti, as the prevailing party, are clearly inappropriate.

■ Although Nahas has failed to justify the delay in filing his papers and appears to have consciously decided not to move to vacate the amended default judgment until there was a chance of its enforcement, it cannot be said that upon a reasonable inquiry his counsel could not have concluded that existing law or its extension justified the motion. His substantive arguments questioning the award of attorney's fees and damages without a hearing as to their reasonableness have some support in law. To the extent Nahas' motion is denied because of his failure to satisfy the reasonable time or extraordinary circumstances standards of Rule 60(b)(6), it was not so obviously time-barred as to justify sanctions. The time limitation is not rigid, but depends on a balancing in each case. *See Norris*, 803 F.2d at 1288 (awarding attorney's fees because claims were time-barred and it was "patently clear" that party had "absolutely no chance of success").

\*　　\*　　\*

Finally, Conti argues that it is entitled to an award of attorney's fees for expenses incurred defending against this motion, pursuant to paragraph 5 of the Closing Agreement, which provides that Nahas will indemnify Conti for costs and expenses, including attorneys' fees. Decision on this argument is deferred because Nahas has not answered it.

\*　　\*　　\*

Nahas' motion to vacate the amended default judgment is denied. Conti's request that Rule 11 sanctions be awarded is also denied.

It is so ordered.