**CHRISTIE'S INC., Plaintiff and Counterclaim Defendant,**

v.

**Dr. Carlo M. CROCE, Defendant and Counterclaim Plaintiff,**

v.

**CHRISTIE, MANSON & WOODS, LTD., Counterclaim Defendant.**

**No. 94 Civ. 6961(DC).**

United States District Court, S.D. New York.

May 22, 1998.

Hughes Hubbard & Reed LLP by Michael E. Salzman, Michael T. Isbell, Lise A. Bromfield, New York City for Christie's Inc. and Christie, Manson & Woods Ltd.

Arnold & Porter by Michael D. Schissel, Joanne S. Berman, Tonia Ouellette Klausner, New York City, for Dr. Carlo M. Croce.

**MEMORANDUM DECISION**

CHIN, District Judge.

Before the Court are defendant Dr. Carlo M. Croce's requests for (1) attorneys' fees and expenses and (2) prejudgment interest. For the reasons set forth below, I will allow costs and prejudgment interest but not attorneys' fees.

## BACKGROUND

In 1992, plaintiff Christie's Inc. advanced $3.1 million to Dr. Croce. The advance was secured by Dr. Croce's Old Master paintings and drawings, which had been appraised by Christie's Inc. and Christie, Manson & Woods, Ltd. (together, "Christie's") at a value ranging from $4.6 to $6.6 million. Christie's and Dr. Croce executed a Consignment Agreement and Secured Promissory Note And Security Agreement and agreed that the paintings and drawings were to be auctioned off to repay the advance. The paintings were to be sold first and the drawings were to be sold only if the proceeds of the auction of the paintings were insufficient to repay the advance.

Unfortunately, the paintings sold for just over $1 million. Hence, the drawings had to be sold as well. In the end, after all the paintings and drawings were sold, there remained a shortfall of some $612,000 on the advance. Dr. Croce refused to pay it.

Christie's sued Dr. Croce for the shortfall as well as attorneys' fees and interest. Dr. Croce counterclaimed for, among other things, fraud, negligent misrepresentation, and breach of fiduciary duty.

The case was tried from April 16 to 28, 1998. The jury returned a verdict in favor of Dr. Croce on his negligent misrepresentation claim and awarded him damages of $816,000. Because the jury also found, however, that Dr. Croce was 40% at fault, the damages award must be reduced by 40% to $489,600. In addition, the jury rejected Dr. Croce's claims for fraud and breach of fiduciary duty. As a consequence of its finding in Dr. Croce's favor on the negligent misrepresentation claim, judgment will be entered as a matter of law against Christie's on its claim against Dr. Croce for the shortfall.

**DISCUSSION**

### 1. *Attorneys' Fees and Expenses*

Dr. Croce seeks attorneys' fees and expenses pursuant to section 5–327 of the New York General Obligations Law, which provides in part as follows:

> Whenever a consumer contract provides that the creditor, seller or lessor may recover attorney's fees and expenses incurred as the result of a breach of any contractual obligation by the debtor, buyer or lessee, it shall be implied that the creditor, seller or lessor shall pay the attorney's fees and expenses of the debtor, buyer or lessee incurred . . . in the successful defense of any action arising out of the contract commenced by the creditor, seller or lessor.

N.Y. Gen. Oblig. Law § 5–327(2) (McKinney 1989 & Supp.1997–98).

Dr. Croce contends that he is entitled to attorneys' fees and expenses under this provision because the consignment agreement and note (together, the "Agreement") constituted a "consumer contract," the Agreement provides for the recovery of attorneys' fees and expenses in the event of successful litigation against Dr. Croce, and Dr. Croce successfully defended against Christie's action to recover the shortfall.

The critical issue is whether the Agreement is a "consumer contract" within the meaning of section 5–327. I hold that it is not.

Section 5–327 defines a "consumer contract" as:

> a written agreement entered into between a creditor . . . as one party with a natural person who is the debtor . . . as the second party, and the money, other personal property or services which are the subject of the transaction are primarily for personal, family or household purposes.

N.Y. Gen. Oblig. Law § 5–327(1)(a) (McKinney 1989 & Supp.1997–98).

Here, the subject of the transaction— the $3.1 million advance, the paintings and drawings, and Christie's services as auction

house—were not "primarily for personal, family or household purposes." Rather, the ultimate purpose of the transaction was two-fold: to provide Dr. Croce with sufficient funds (1) to refinance his Sotheby's loan and (2) to make a $700,000 investment in Italgene, a biotech company. The latter investment clearly was made with an "eye toward profit," *In re Booth,* 858 F.2d 1051, 1054–55 (5th Cir.1988) (Truth in Lending Act case), and the proceeds from the Sotheby's loan had also been used by Dr. Croce to invest in stock for purposes of turning a profit.

Section 5–327 is a consumer protection statute. It is intended to level the playing field for consumers who purchase or lease personal property or who purchase services primarily for "personal, family or household purposes." It could not have been intended to apply to a $3.1 million dollar loan made in part to finance a speculative investment in stock and in part to refinance a prior loan that also had been used to fund an investment in stock. *See In re Reid,* 757 F.2d 230 (10th Cir.1985) (holding that certain old, valuable religious paintings that had been pledged as collateral for business loans were not primarily for "personal, family or household use," even though paintings were displayed at home).

■ Accordingly, the application for attorneys' fees is denied. Expenses, however, will be allowed to the extent that costs are usually awarded to the prevailing party. *See* Fed. R.Civ.P. 54(d)(1); Local Civil Rule 54.1; 28 U.S.C. § 1920. Although Dr. Croce did not prevail on all his claims, he surely is the prevailing party. He was sued by Christie's for $612,000 plus attorneys' fees and costs, and yet in the end he not only defeated Christie's claim, he also obtained a $489,600 award in his favor.

**2. Prejudgment Interest**

■ Dr. Croce also seeks prejudgment interest. I agree with Dr. Croce that the jury must have found that the wrongful conduct occurred before the Agreement was signed on November 11, 1992. The difficulty, however, is that it is unclear whether the jury calculated Dr. Croce's damages based on a valuation of his collection in 1993 or in 1998 or at some point in between.

Although it is difficult to reach any conclusion with any certainty, I believe it is unlikely that the jury used either a 1993 date or a 1998 date. The damages probably would have been substantially lower had the earlier date been used and substantially higher had the later date been used.

Both sides suggest an intermediate date as a compromise. Dr. Croce suggests using August 1995. Christie's suggests September 24, 1996, the date when Dr. Croce first asserted his counterclaim for negligent misrepresentation.

Under all the circumstances, I will award Dr. Croce pre-judgment interest at 9% simple interest per annum on $489,600 from September 24, 1996 to the date of entry of judgment.

### CONCLUSION

Dr. Croce's request for attorneys' fees is denied. Costs and prejudgment interest are awarded to the extent set forth above. Dr. Croce shall submit a bill of costs and proposed judgment, on notice, forthwith. The Clerk of the Court shall enter judgment after taxing costs and shall include the amount of costs taxed in the judgment.

SO ORDERED.