LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

FAST LANE CAR SERVICE, INC., Virjilio Lajara, Elis Agency INC., and Irina Gitsin, Defendants.

Case No. 07–CV–00037 (FB)(CLP).

United States District Court, E.D. New York.

Jan. 28, 2010.

342

Jeffrey R. Krantz, Esq., Bennett, Giuliano, McDonnell & Perrone LLP, New York, NY, for the Plaintiff.

Efrain Ramos, Jr., Esq., Law Office of Efrain Ramos, Jr., Ozone Park, NY, for Defendants Fast Lane Car Service, Inc., and Virjilio Lajara.

Richard B. Lind, Esq., Law Office of Richard B. Lind, Esq., New York, NY, for Defendant Elis Agency, Inc.

### MEMORANDUM AND ORDER

BLOCK, Senior District Judge:

On January 5, 2010, Magistrate Judge Cheryl L. Pollak issued a Report and Recommendation ("R & R") recommending that Plaintiff Liberty Mutual Insurance Company ("Liberty") be awarded damages for unpaid insurance premiums in the amount of $174,193.00 from Defendants Fast Lane Car Service, Inc., and Virjilio Lajara (collectively, "Fast Lane").[1] The R & R also recommends that Liberty be awarded prejudgment interest on this sum at 9% per annum from July 1, 2005, plus post-judgment interest in accordance with 28 U.S.C. § 1961(a). The R & R also stated that failure to object within fourteen days of receipt of the R & R would waive any right to further judicial review. See R & R at 17, Docket Entry No. 37. According to the docket, Fast Lane's counsel received electronic notice of the R & R on January 6, 2010; no objections have been filed.

If clear notice has been given of the consequences of failure to object, and there are no objections, the Court may adopt the R & R without de novo review. See Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir.2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision."). The Court will excuse the failure to object and conduct de novo review if it appears that the magistrate judge may have committed plain error, see Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir.2000); no such error appears here.

Accordingly, the Court adopts the R & R without de novo review and directs the Clerk to enter judgment in accordance with the R & R.

### SO ORDERED.

### REPORT AND RECOMMENDATION

CHERYL L. POLLAK, United States Magistrate Judge.

Plaintiff Liberty Mutual Insurance Co. ("Liberty Mutual") filed this action on September 11, 2006 against defendants Fast Lane Car Service Inc. ("Fast Lane"), Virjilio Lajara, Elis Agency Inc., and Irina Gitsin. Plaintiff alleges that Fast Lane, owned by Lajara, avoided paying appropriate insurance premiums by supplying false information on an application for business automobile insurance. (Compl.[1] ¶ 55; Andersson Aff.[2] ¶ 2). When defendant Fast Lane refused to pay the corrected insurance premiums, plaintiff brought the instant claim against Fast Lane and Lajara for breach of contract, negligent misrepresentation and intentional misrepresentation. (Compl. ¶¶ 66–96).[3]

Defendants Fast Lane and Lajara filed an answer to the Complaint on June 25, 2007. In addition, they also filed cross-claims against Elis Agency and Gitsin for breach of good faith, fair dealing and fiduciary duty. Gitsin and Elis Agency were

---

1. The Fast Lane defendants are the only remaining defendants; Elis Agency, Inc. and Irina Gitsin entered into a stipulated dismissal with prejudice on April 10, 2008. See Docket Entry No. 18.

1. Citations to "Compl." refers to the Complaint filed by plaintiff on January 5, 2007.

2. Citations to "Andersson Aff." refer to the affidavit of Perola Andersson, September 21, 2009.

3. Defendants Elis Agency and Irina Gitsin were discontinued from this action on April 10, 2008.

later dismissed by stipulation with plaintiff on April 10, 2008.

Thereafter, defendants Lajara and Fast Lane failed to appear for a status conference scheduled for January 23, 2009. As a result, this Court issued a Report and Recommendation on April 8, 2009, ordering defendants to contact the Court within 10 days and warning that a default judgment could be entered against them if they failed to appear. Defendants did not respond to this Court's Order. On July 17, 2009, this Court issued a second Report and Recommendation, recommending that default be entered against the defendants. By Order dated August 7, 2009, the Honorable Frederic Block adopted this Court's Report and Recommendation and referred the matter to the undersigned to determine the relief to be awarded plaintiff.

### FACTUAL BACKGROUND

According to the Complaint, Liberty Mutual is a Massachusetts insurance carrier authorized to issue policies on behalf of the New York Automobile Insurance Plan (the "Plan"), which provides coverage to vehicles operated for the public on a for-hire basis. (Compl. ¶¶ 2–3, 12–13). Pursuant to New York State Insurance Law § 5301, the Plan offers insurance as a "to individuals and/or businesses who due to high risk were unable to obtain coverage in the voluntary insurance market." (Id. ¶ 12). The premium for insurance under the plan is calculated in part based on the territory in which any and all driving occurs, called the "Rating Territory." (Id. ¶ 21). A company that operates solely in

Suffolk County is viewed as having a lower risk of accidents and is thus charged with lower premiums than a company providing services in Manhattan. (Id. ¶ 23). A company's Rating Territory is determined based on the highest rated territory in which the company operates its vehicles. (Id. ¶ 24). A Suffolk County company that provides any auto service in the New York Metropolitan area would have to indicate the higher rating code for New York City, not Suffolk County. (Id. ¶ 25).

On May 4, 2006, Lajara filled out a New York Insurance application form for business insurance on behalf of Fast Lane, a New York corporation. (Id. ¶ 42). On the application, Lajara described the nature of Fast Lane's business as "Airport Limousine," listing the company's place of business as 230 East Jericho Turnpike, Huntington Station, in Suffolk County, N.Y. and listing the location of operation as Huntington Station, New York. (Ins. App.[4] at 1). Based on Lajara's representations on the application, Fast Lane would be charged a premium based on Rating Territory 76.[5] (Id.) The application makes it clear that the premium is subject to review by Liberty Mutual, stating in part: "The Applicant understands that the premium shown on this application is an estimated premium. The carrier reserves the right to adjust the premium either prior to or after the issuance of the policy, whenever applicable." (Id. ¶ 33). The application for business automobile insurance was submitted to Liberty Mutual by Elis Agency, the insurance broker. (Andersson Aff. ¶ 3; Compl. ¶ 41). Liberty Mutual then issued

---

**4.** Citations to "Ins.App." refer to the Insurance application submitted by defendants through Elis Agency for insurance coverage under the Plan. A copy of the application is appended as "Exhibit A" to the Affidavit of Perola Andersson, filed September 21, 2009.

**5.** The Court notes that on the face of the application there is no definition given for

"Rating Territory 76" and nowhere in the application did the insurance applicant actually affirm that he would operate solely in Suffolk County. However, in Section 8 of the application, Lajara did state that Fast Lane would operate "customarily" in Territory 76. (Ins.App. at 2).

a business automobile insurance policy to defendants, bearing Policy No. AS1–321–92195–015 (the "Policy"). (Compl. ¶ 50). The policy covered Fast Lane from May 5, 2005 to August 27, 2005. (Andersson Aff. ¶ 4). Based upon the application, Liberty Mutual calculated premiums in accordance with rates for airport limos operating in Suffolk County. (Andersson Aff. ¶ 5). Fast Lane later requested that more vehicles be added to the policy and other vehicles were added by Liberty Mutual. (Compl. ¶ 53).

Liberty Mutual later conducted an investigation of Fast Lane and determined that Fast Lane had been operating a for-hire care service in Brooklyn, located in Kings County, not in Suffolk County, as claimed in the initial application. (Compl. ¶ 55; Andersson Aff. ¶ 6). As a result, Fast Lane warranted a Rating Territory of 17 for Brooklyn, not 76 for Suffolk County. (Compl. ¶ 55(b)). Liberty Mutual also determined that Fast Lane was based in Ozone Park, in Queens County, and not in Huntington Station, in Suffolk County, as stated in the application. (Compl. ¶ 55(d)). Liberty Mutual also discovered that Fast Lane was operating a for-hire car service, not an airport limousine service, another factor that affects the premium calculation. (Compl. ¶¶ 29–31, 55(c)). Fast Lane also failed to disclose in its application that it had prior insurance coverage, information that was specifically requested on the insurance application. (Compl. ¶ 55(e); Ins. App. at 2, Question 10).

After discovering this false information in the application, Liberty Mutual attempted to exercise its right under the Policy to review the records of Fast Lane for a potential premium adjustment. (Compl. ¶ 56). However, Fast Lane and Lajara refused to comply or provide additional information to Fast Lane. (*Id.* ¶¶ 57–58). On August 27, 2005, after defendants failed or refused to allow Liberty Mutual to conduct the requested review, Liberty Mutual cancelled the policy. (*Id.* ¶ 62). Liberty Mutual has demanded payment from Fast Lane on several occasions, but has received no additional payments since July 6, 2005. (Andersson Aff. ¶¶ 15–16; Exh. E at 1).

During the duration of its policy, Fast Lane insured a total of 47 vehicles. (Andersson Aff. ¶ 10). At the Brooklyn insurance premium rates, Liberty Mutual calculates that Fast Lane owes outstanding premiums of $174, 218.00.[6] Liberty Mutual calculates that Fast Lane should have been billed $228,529.00, plus a $25 surcharge for a total of $228,554.00, but made premium payments totaling only $54,336.00. (*Id.* ¶ 14). Therefore, Liberty Mutual alleges that Fast Lane owes $174,218.00. (*Id.*) In addition to the premiums owed, Liberty Mutual seeks an award of nine percent interest measured from May 5, 2005 when the policy was issued. To date, defendants have failed to respond to the default or to the Court's Order relating to the calculation of damages.

## A. *Default Judgment*

### 1) *Standards*

When a party fails to appear in an action, Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the

---

**6.** The total owed—$228,529.00, plus a $25 surcharge—was reduced by crediting Fast Lane with the prior payment of premiums totaling $54,336.00. This number represents a reduction from the amount originally requested in the Complaint, where Liberty Mutual claimed the additional premium due was $185,928.00. (Compl. ¶ 59).

default pursuant to Rule 55(c), a default judgment may be entered. *See* Fed. R.Civ.P. 55(b).

On August 7, 2009, the Clerk of the Court entered a default in this case against defendants Fast Lane and Lajara based on their failure "to plead or otherwise defend [against the instant Complaint]." Fed. R.Civ.P. 55(a). Thereafter, Liberty Mutual moved for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Defendants have not made any motions in the interim.

■ The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981). When evaluating whether to grant a default judgment, the court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 95–96; *see also Meehan v. Snow*, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 95–96. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F.Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Courts should take great care in entering default judgment, ensuring if at all possible that both parties have their cases judged on the merits. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d at 95–96.

■ A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established" and "the amount of money potentially involved"—the more money involved, the less justification for entering the default judgment. *See Hirsch v. Innovation Int'l, Inc.*, No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, §§ 2685, 2688 (3d ed. 1998). "The fact that a complaint stands unanswered does not suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Liberty Mut. Ins. Co. v. Luxury Transp. Management Inc.*, No. 07 CV 0608, 2009 WL 1033177, at *6 (E.D.N.Y. April 16, 2009). "Once the court is satisfied that the facts alleged state a valid cause of action, the plaintiff must prove its damages to a "reasonable certainty"—the defendants' default does not relieve the plaintiff of this burden." *Id.* (citing *Credit Lyonnais Sec. (USA) Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999)).

### 2) *Application*

### i) *Causes of Action*

Liberty Mutual alleges the following causes of action against defendants Fast

Lane and Lajara: 1) breach of contract, 2) negligent misrepresentation, and 3) intentional misrepresentation. Since jurisdiction in this case is based on diversity, the Court applies New York substantive law in analyzing whether Liberty Mutual has stated a claim for breach of contract, negligent misrepresentation, and intentional misrepresentation against Fast Lane and Lajara. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (holding that "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law").

ii) *Breach of Contract*

■ In order to state a breach of contract claim under New York law, Liberty Mutual must allege: 1) the existence of a contract; 2) performance of the contract by one party; 3) breach by the other party; and 4) damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000). Where breach of contract is asserted against a corporate officer or owner, the plaintiff must show both that the officer or owner exercised complete domination over the corporation with respect to the transaction at issue, and that the domination was used to commit a fraud or wrong that injured the party seeking to assert the claim. *Morris v. New York State Dep't of Taxation & Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993).

■ On March 5, 2005, Liberty Mutual issued Fast Lane an insurance policy in accordance with the application submitted on Fast Lane's behalf by Lajara. (Compl. ¶¶ 44, 50; Ins.App. at 4). Liberty Mutual satisfied its responsibilities under the contract by providing insurance to the vehicles owned by Fast Lane, and by charging rates based on the information provided in the application. (Compl. ¶¶ 47, 49, 51). Fast Lane breached the contract when it failed to produce its books in order to allow Liberty Mutual to conduct a premium audit, as was required by the rules of the Policy. (Compl. ¶¶ 56–58, 67). In addition, Fast Lane failed to notify Liberty Mutual of any changes pertaining either to the location of the company's vehicles or its business purpose. (*Id.* ¶ 68). After Liberty Mutual discovered the details of Fast Lane's true operations in Brooklyn, and increased defendant's premium accordingly, Fast Lane failed to pay Liberty Mutual the adjusted premium. (*Id.* ¶ 73). With these facts, the Court finds that Liberty Mutual has satisfied all the elements necessary to state a breach of contract claim against Fast Lane. *See Liberty Mut. Ins. Co. v. Luxury Transp. Management Inc.*, 2009 WL 1033177, at *10.

■ The Court notes that Liberty Mutual also seeks damages against defendant Lajara for the breach of contract. (Compl. ¶ 75). Generally, corporate officers will not be liable for breach of contract absent a showing that it is necessary to pierce the corporate veil to prevent inequity. *See Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994); *see also Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140–41, 623 N.E.2d 1157, 1160, 603 N.Y.S.2d 807, 810 (1993). Since plaintiffs have not made a showing that the corporate veil should be pierced in this case, Mr. Lajara is not liable for Fast Lane's breach of contract.

iii) *Negligent and Intentional Misrepresentation*

■ Plaintiff's claim for intentional misrepresentation under New York State law must include four elements: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a

result of such reliance." *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 940 (2d Cir.1998) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,* 57 F.3d 146, 153 (2d Cir.1995)).

▮ As for negligent misrepresentation, the Second Circuit has established that:

A negligent misrepresentation is actionable under New York law where the defendant has been careless "in imparting words upon which others were expected to rely and upon which they did or failed to act to their damage," and where the author of the statement has "some relationship or duty ... to act with care" vis-a-vis the party at whom the statement is directed.

*Aetna Casualty & Surety Co. v. Aniero Concrete Co.,* 404 F.3d 566, 583 (2d Cir. 2005) (citing *White v. Guarente,* 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977)).

▮ Where fraud or intentional misrepresentation is pled, corporate officers may be held personally liable for acts of fraud if the officers participate in and have knowledge of the fraud. *See Cohen v. Koenig,* 25 F.3d at 1173; *see also Chen v. United States,* 854 F.2d 622, 628 (2d Cir. 1988) (equating intentional misrepresentation to fraud under New York law); *Model Imperial Supply Co. v. Westwind Cosmetics, Inc.,* 808 F.Supp. 943, 946 (E.D.N.Y. 1992) (holding that corporate officers may be personally liable for acts of negligent misrepresentation).

Additionally, courts in the Second Circuit have applied Rule 9(b) of the Federal Rules of Civil Procedure to claims of both intentional and negligent misrepresentation, requiring that these claims be "stated with particularity." Fed.R.Civ.P. 9(b); *see also Aetna Casualty & Surety Co. v. Aniero Concrete Co.,* 404 F.3d at 583 (analyzing Rule 9(b) as applied to negligent misrepresentation); *Felfe v. CIBA Vision Corp.,*

No. 03 CV 3357, 2004 WL 551200, at *2 (S.D.N.Y. Mar. 19, 2004) (analyzing Rule 9(b) as applied to intentional misrepresentation). In interpreting the requirements of Rule 9(b), the Second Circuit has held that the plaintiff must: " '(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.' " *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).

▮ This Court finds that the facts alleged in the Complaint sufficiently establish Liberty Mutual's claims for both intentional and negligent misrepresentation against defendants Fast Lane and Lajara. Lajara, acting as the owner of Fast Lane, represented on the insurance application that Fast Lane was based in Suffolk County and operated an airport limousine service. (Compl. ¶¶ 44–47). Further, Lajara certified that this information about Fast Lane was true and accurate, and acknowledged familiarity with all the rules of the Plan. (*Id.* ¶ 82). In signing the insurance application, Lajara's signature confirmed that "to the best of the Applicant's knowledge and belief ... all statements in this application are true." (Ins.App. at 4). However, according to Liberty Mutual, the information provided was false; Fast Lane was actually operating a for-hire transportation service in Brooklyn while the company itself was based in Ozone Park, in Queens County, N.Y. (Compl. ¶ 55; Andersson Supp. Aff. ¶ 6). Based on the information provided in the insurance application, Liberty Mutual calculated Fast Lane's premiums, and Fast Lane and Lajara knew or should have known that plaintiff would rely on this information in assessing Fast Lane's rates. (Compl. ¶ 84). If Liberty Mutual had full knowl-

edge of the true nature of defendants' operations, it would not have issued the policy at the rates it did. (*Id.* ¶ 86). It can reasonably be inferred that Lajara's intent in supplying the false information was to obtain lower premium rates for Fast Lane. This Court finds that these facts as alleged are sufficient to state claims for intentional and negligent misrepresentation against both defendants Fast Lane and Lajara.

B. *Default Judgment Damages*

 It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. *See Clague v. Bednarski*, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *see also Montcalm Publ'g Corp. v. Ryan*, 807 F.Supp. 975, 977 (S.D.N.Y.1992). However, unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d at 158. The plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. *Id.* Indeed, " 'while a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.' " *Levesque v. Kelly Commc'ns, Inc.*, No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)).

 Although the "court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v. ContiCommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing *Transportes Aereos De Angola v. Jet Traders Inv. Corp.*, 624 F.Supp. 264, 266 (D.Del.1985)), *aff'd*, 873 F.2d 38 (2d Cir.1989). Here, where Liberty Mutual has filed detailed affidavits and exhibits pertaining to its contract with Fast Lane and the damages requested, and where defendants have failed to contest the accuracy of plaintiffs submissions, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

C. *Calculation of Damages Owed*

1) *Premiums and Surcharges*

 Liberty Mutual seeks damages equal to the difference between what it would have charged Fast Lane had the true facts about the business been supplied and the amount that Fast Lane actually paid. (*See* Andersson Supp. Aff. ¶¶ 7, 9–10, 14). Had Liberty Mutual been informed that Fast Lane was operating for-hire vehicles in Brooklyn, defendants would have been charged the standard annual insurance premium in force at that time, which varied from $1,618 to $7,436 per vehicle. (Andersson Supp. Aff., Exh. D). The Court notes that plaintiff's standard annual rate is composed of several different premiums: the Bodily Injury ("BI") premium, Physical Damage ("PD") premium, Personal Injury Protection ("PIP") premium, Additional Personal Injury Protection ("APIP") premium, and Uninsured Motorists ("UM") premiums. (*See id.* ¶ 9). The BI and PD premiums were subject to an "Increased Limit Factor," which is a multiplier that reflects additional liability coverage. (*Id.*) During the period at issue, Fast Lane insured forty-seven vehicles in Brooklyn. (An-

dersson Supp. Aff. ¶ 10). The amount that Fast Lane should have paid Liberty Mutual is calculated by multiplying each vehicle's correct annual premium by the percentage of the year each vehicle was insured. (*Id.* ¶ 11). However, not every vehicle was insured for the entire duration of the contract. Although Fast Lane's insurance policy from Liberty Mutual was active for 114 days, from May 5, 2005 to August 27, 2005 (*id.* ¶ 4), more than half of the vehicles were not added to the insurance policy until June 30, 2005. (Andersson Aff., Exh. D). Only one vehicle was insured in the initial application, a 1999 Chevrolet Express Van, and it was covered only until June 11, 2005. (*Id.*) For this vehicle, Liberty Mutual calculates a $3,929 premium should have been paid based on rates applicable to for-hire vehicles operating in Brooklyn. The highest premium calculated is for a 1999 Nissan which was insured from June 1, 2005 until August 27, 2005. For this vehicle, Liberty Mutual calculates that $7,436 in premiums should have been charged. (*Id.*) The last vehicle to be added to the policy was a 1998 Ford that was added on July 15, 2005. (*Id.*) This vehicle was insured until August 27, 2005 and Liberty Mutual calculates that $3,671 in premiums should have been charged. Together, the amounts owed for all vehicles at the corrected rate equals $228,529.00, not inclusive of premiums already paid at the initial rate. (Andersson Aff. ¶ 13).

In addition to the amount owed on the prorated annual earned premiums for all the vehicles, Liberty Mutual has added to this a surcharge fee of $25.00. Since no explanation was provided for this surcharge in the supporting affidavit of Perola Andersson and it is unclear what the surcharge represents, the Court has declined to recommend awarding it to plaintiff.

During the time the company's vehicles were insured, Fast Lane paid Liberty Mu-

tual $54,336.00 in insurance premium payments. (*Id.* ¶ 14). Deducting the amount paid to Liberty Mutual from the $228,529.00 total that this Court has found to be owed, the outstanding balance is $174,193.00. Having reviewed plaintiff's calculations and supporting documentation, the Court respectfully recommends that plaintiff be awarded $174,193.00 in damages from defendant Fast Lane.

### 2) *Prejudgment Interest*

■■■■■ Plaintiff also seeks an award of prejudgment interest measured at the rate of nine percent (9%) per annum from the date the policy was issued on May 5, 2005. (*Id.* ¶ 26). Under New York law, where claims involve a breach of contract or misrepresentation, the plaintiff is entitled to 9% per annum prejudgment interest. N.Y. C.P.L.R. §§ 5001(a), 5004. *See Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir.2008) (holding that "[i]n a diversity case, state law governs the award of prejudgment interest"); *Christie's, Inc. v. Croce*, 5 F.Supp.2d 206, 208 (S.D.N.Y.1998) (awarding prejudgment interest for a claim of negligent misrepresentation); *see also Kirton v. Northwestern Mut. Life Ins. Co.*, No. 00 CV 7646, 2006 WL 3051772, at *1–6 (E.D.N.Y. Oct. 24, 2006); *Vipler v. Pollio*, 255 A.D.2d 786, 788, 680 N.Y.S.2d 273, 275 (3d Dep't 1998). According to the statute, "interest shall be computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). When damages are such that they are incurred over a period of time—in this case, the duration of the insurance policy—"interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id. See Kirton v. Northwestern Mut. Life Ins. Co.*, 2006 WL 3051772, at *7: *see also Christie's, Inc. v. Croce*, 5 F.Supp.2d at 208.

Since Fast Lane's policy was in effect from May 5, 2005 until August 27, 2005, a reasonable intermediate date would be halfway between the start and end dates of the policy, or July 1, 2005. As such, the Court respectfully recommends that pre-judgment interest be awarded to plaintiff on the principal amount of $174,193.00, calculated at 9% per annum interest from the date of July 1, 2005.[7]

### 3) Joint and Several Liability

The Second Circuit has established that " '[o]fficers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it ....' " Cohen v. Koenig, 25 F.3d at 1173 (quoting People v. Apple Health & Sports Clubs, Ltd., 80 N.Y.2d 803, 807, 599 N.E.2d 683, 686, 587 N.Y.S.2d 279, 282 (1992) (alterations in citation)). Under New York State law, intentional misrepresentation is equivalent to fraud. See Chen v. United States, 854 F.2d at 628 (citing cases). Corporate officers have also been found personally liable for cases of negligent misrepresentation. See Model Imperial Supply Co. v. Westwind Cosmetics, Inc., 808 F.Supp. at 946.

 Based on these criteria, this Court finds defendant Lajara to be personally liable for Liberty Mutual's intentional and negligent misrepresentation claims. Lajara's involvement in the fraud is clear upon examination of Fast Lane's insurance application. In Section 3 of the insurance application, the President of Fast Lane is listed as "Virjilio Lahara." (Ins.App. at 1). (This is most likely a phonetic misspelling of defendant's last name, since he signed the same application as "Lajara" and is identified in the Complaint as Lajara). Furthermore, Lajara signed the application and personally certified that all statements contained in the application were true. (Id. at 4).

Having established that Lajara had a personal role in preparing and/or endorsing the fraudulent statement and thus, in the intentional and negligent misrepresentation, the Court respectfully recommends that Lajara be held jointly and severally liable for the $174,193.00 in damages. Although Lajara cannot be held liable for breach of contract, the amount owed to Liberty Mutual in damages for the intentional and negligent misrepresentation is the same as that owed for breach of contract. Under either cause of action, compensatory damages would be equal to "the amount necessary to put [Liberty Mutual] in the same economic position [it] would have been in had ... defendant[s] fulfilled [the] contract." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir.1995). Given Lajara's personal involvement in the intentional and negligent misrepresentations to Liberty Mutual, the Court respectfully recommends that Lajara and Fast Lane be held jointly and severally liable for the total amount owed to plaintiff.

### CONCLUSION

Accordingly, it is respectfully recommended that default judgment be entered against defendants Fast Lane and Lajara, and that they be held jointly and severally liable for payment of damages to plaintiff. It is respectfully recommended that Liber-

---

7. The Court notes that plaintiff is also entitled to postjudgment interest as governed by federal statute. Schipani v. McLeod, 2008 WL 2890466, at *6 (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)). Pursuant to 28 U.S.C. § 1961(a), plaintiff is entitled to postjudgment interest calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [judgment]," computed daily from "the date of the entry of the judgment"—the date default judgment is entered by the district court. Id. (citing 28 U.S.C. § 1961(a)).

ty Mutual be awarded damages of $174,193.00 for Fast Lane's unpaid insurance premiums, prejudgment interest at 9% per annum on this figure from July 1, 2005, and any post-judgment interest in accordance with 28 U.S.C. § 1961(a).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing System (ECF) or by mail.

**SO ORDERED.**