**Thomas GESUALDI, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, and Thomas F. Corbett as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund, Plaintiffs,**

v.

**J.H. REID, General Contractor, Defendant.**

**14-cv-4212(ADS)(GRB)**

United States District Court, E.D. New York.

Signed July 29, 2016

APPEARANCES: Trivella & Forte LLP, Attorneys for the Plaintiffs, 1311 Mamaroneck Ave., Suite 170, White Plains, NY 10605 By: Gina E. Nicotera, Esq., Jonathan M. Bardavid, Esq., Of Counsel

Tobia & Sorger, LLC, Attorneys for the Defendant, 500 Supor Blvd., Harrison, NJ

07029 By: Ronald L. Tobia, Esq., Of Counsel

## ORDER

SPATT, District Judge:

On July 9, 2014, the Plaintiffs Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, and Thomas F. Corbett, as trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Plaintiffs" or the "Funds") commenced this action against the Defendant J.H. Reid, General Contractor (the "Defendant") under Section 502(g)(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and Section 301 of the Labor Management Relations Act of 1947 ("LMRA").

The Plaintiffs sought to recover allegedly delinquent contributions that the Defendant was obligated to make to the Funds pursuant to the terms of a collective bargaining agreement. In particular, the Plaintiffs sought damages under the statutes and the agreement, consisting of the unpaid contributions, prejudgment interest, liquidated damages, attorneys' fees and litigation costs.

The Defendant did not answer or otherwise respond to the complaint.

On August 11, 2014, the Plaintiffs filed an amended complaint, which added a cause of action for injunctive relief, namely, an order compelling the Defendant to submit its books and records for an audit and to pay any amounts that an audit may reveal to be due, together with related damages.

On September 16, 2014, the Clerk of the Court noted the Defendant's default.

On October 14, 2014, the Funds filed a motion for a default judgment.

On October 16, 2014, this Court referred that motion to United States Magistrate Judge Gary R. Brown for a recommendation as to whether it should be granted, and if so, the relief to be awarded.

On August 12, 2015, Judge Brown issued a Report and Recommendation (the "First R & R"), recommending that the Court deny without prejudice the motion for a default judgment. In particular, Judge Brown noted that, under Fed. R. Civ. P. 5(a)(2), a pleading that asserts a new claim for relief against a party who is in default must be personally served on that party under Rule 4. Therefore, Judge Brown concluded that the amended complaint had not been properly served and the Plaintiffs had not satisfied the procedural prerequisites for entitlement to a default judgment.

On August 25, 2015, the Plaintiffs timely filed an objection to the First R & R.

On September 16, 2015, upon due consideration of the Plaintiffs' objection, this Court issued an order adopting the First R & R to the extent that it recommended denial without prejudice of the Plaintiffs' motion for a default judgment. However, the Court found that good cause had been shown to extend, *nunc pro tunc*, the time for service of the amended complaint until August 17, 2015, and declined to vacate the Clerk's entry of default.

The Court granted the Plaintiffs leave to renew their motion for a default judgment within thirty days of the date of that Order. Consistent with the Court's directives, on September 23, 2015, the Plaintiffs filed a renewed motion.

On September 24, 2015, the Court again referred this matter to Magistrate Judge Brown for a recommendation as to wheth-

er the Plaintiffs' renewed motion for a default judgment should be granted, and if so, the damages to be awarded.

On October 15, 2015, while the motion for a default judgment was on submission, attorney Ronald L. Tobia, Esq., filed a notice of appearance on behalf of the Defendant. However, for more than eight months, Mr. Tobia did not seek to vacate the default entered against the Defendant; to interpose an answer or other response to the complaint; or to oppose the motion for entry of a default judgment.

On June 29, 2016, Judge Brown issued a second Report and Recommendation (the "Second R & R"), recommending that: (i) the renewed motion for entry of a default judgment be granted; (ii) damages in the total amount of $1,030,265.28, representing unpaid contributions, accrued interest, liquidated damages, attorneys' fees, and costs, be awarded to the Plaintiffs; (iii) continuing *per diem* interest at the rate of $291.74, from October 1, 2014 until judgment is entered, also be awarded; and (iv) the portion of the motion seeking injunctive relief be denied.

On June 30, 2016, the Plaintiffs filed an affidavit by Michelle Salerno, stating that copies of the Second R & R had been duly served upon the Defendant and Mr. Tobia at his law firm.

On July 13, 2016, one day before the expiration of the deadline for filing objections, Mr. Tobia filed a letter motion addressed to Judge Brown requesting a four-week extension of time to object to the Second R & R. By electronic order dated July 14, 2016, this Court granted in part and denied in part Mr. Tobia's request, stating that:

> The Defendant has already had two weeks to file objections to Judge Brown's R & R, and the Court finds that an additional four-week extension is not warranted under the circumstances. A modest and <u>final</u> two-week extension, until 7/28/16, is granted.

(emphasis supplied).

The extended deadline to file objections, namely, July 28, 2016, passed without any party filing a timely objection to the Second R & R.

Despite the Court's clear indication that the two-week extension previously granted to the Defendant was "final," on July 29, 2016, after the expiration of the extended deadline, Mr. Tobia filed a second letter motion, again addressed to Judge Brown, seeking a further extension of time to file objections to the Second R & R. In support of this request, Mr. Tobia set forth the same reasons he offered in his July 13, 2016 request, which the Court expressly found insufficient to justify more than a two-week delay. Having failed to otherwise meaningfully participate in the more than two-year history of this case, the Court discerns no basis for granting Mr. Tobia's present request for an additional week to "review the issues in this matter." His letter motion is denied.

Pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, the Court has reviewed the Second R & R for clear error, and finding none, now concurs in both its reasoning and its result.

Therefore, the June 29, 2016 Report and Recommendation is adopted in its entirety, and the Plaintiffs' motion for a default judgment is granted as set forth therein. The Clerk of the Court is respectfully directed to enter judgment in favor of the Plaintiffs consistent with this Order and to close the case.

It is **SO ORDERED.**

## REPORT AND RECOMMENDATION

GARY R. BROWN, United States Magistrate Judge

Before the undersigned is a renewed motion for default judgment by plaintiffs

Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Joseph A. Ferrara, Sr., Frankel H. Finkel, Marc Herbst, Denise Richardson, Thomas F. Corbett as trustees and fiduciaries the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds ("Funds") against defendant J.H. Reid, General Contractor, which has been referred to the undersigned by the Honorable Arthur D. Spatt for report and recommendation as to whether the renewed motion should be granted, and if so, what relief should be awarded. Docket Entry ("DE") 32. For the reasons set forth herein, the undersigned respectfully recommends that the (1) renewed motion for default judgment be granted, (2) damages be awarded in the amount of $1,030,265.28 [1] for unpaid contributions, interest, liquidated damages, attorneys' fees and costs, (3) interest be awarded at the rate of $291.74 per day commencing October 1, 2014 until the date judgment is entered, and (4) injunctive relief be denied.

## PROCEDURAL BACKGROUND

On July 9, 2014, plaintiffs commenced this action by filing a complaint, alleging claims under Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a) to collect delinquent contributions and other sums owed by defendant to employee benefit plans pursuant to an audit. Compl., DE 1. On August 11, 2014, plaintiffs filed an amended complaint, which added a third cause of action for injunctive relief under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). Am. Compl. ¶¶ 45-51, DE 6. On September 16, 2014, the Clerk of the Court

entered a certificate of default. DE 10. Plaintiffs filed a motion for default judgment on October 14, 2014. DE 12. Upon the district court's referral, the undersigned issued a report and recommendation on August 12, 2015, concluding that the amended complaint had not been properly served, and the plaintiffs had not satisfied the procedural prerequisites for default judgment. DE 21.

On September 16, 2015, the district court denied the motion for default judgment without prejudice, and extended the time for service of the amended complaint until August 17, 2015. DE 26. On September 3, 2015, plaintiffs filed an affidavit of service of the amended complaint upon defendant via personal delivery to the New York Secretary of State. DE 25. On September 23, 2015, plaintiffs filed the instant renewed motion for default judgment. DE 27. On September 24, 2015, the district court referred the renewed motion for default judgment to the undersigned for report and recommendation. DE 32.

## FACTUAL BACKGROUND

Plaintiffs are trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. § 1002(21)(A). Am. Compl. ¶ 3. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §§ 1002(3), (37), jointly administered by the Board of Trustees, in accordance with Section 302(c)(5) of LMRA, 29 U.S.C. § 186(c)(5). *Id.* at ¶ 4.

Defendant, a foreign business corporation licensed to do business in New York, Am. Compl. ¶ 8, is a party to a collective bargaining agreement ("CBA") with the Local 282, International Brotherhood of Teamsters ("Union"). *Id.* at ¶¶ 5, 9. The

---

1. Plaintiffs' renewed motion for default judgment calculates $1,029,307.28 in for all unpaid contributions, interest, liquidated damages, attorneys' fees and costs, but a sum of all the amounts requested equals $1,030,265.28 instead. DE 27; Pls.' Br. 16, DE 31.

CBA requires defendant to contribute to the Funds on behalf of workers covered by the CBA, at specified rates for each hour of covered employment, subject to certain limitations. *Id.* at ¶ 10. The Funds are maintained pursuant to an Agreement and Declaration of Trust ("Trust Agreement"). Am. Compl. ¶ 12; Bardavid Decl. ¶ 13, DE 28.

Pursuant to the Trust Agreement, the failure to submit remittance reports and pay contributions shall be a violation of the CBA. Bardavid Decl. ¶ 14 (citing Bardavid Decl. Ex. 5 Art. IX, § 3). Defendant failed to submit remittance reports for November 2013 through August 2014. Am. Compl. ¶ 22; Bardavid Decl. ¶ 15. By letters dated February 21, 2014, April 7, 2014, May 8, 2014, and May 29, 2014, the Funds have demanded the missing reports and contributions, but defendant has failed to respond to the letters. Am. Compl. ¶ 23; Bardavid Decl. ¶¶ 16-17.

The Trust Agreement requires defendant to submit to a periodic audit of its relevant books and records in connection to the defendant's contributions to the Funds. Am. Compl. ¶¶ 14-16; Bardavid Decl. ¶ 18 (citing Bardavid Decl. Ex. Art. IX, § 1(d)). The Funds, through the auditors, conducted an audit, Audit 13-0192, of defendant's books and records for May 23, 2011 through April 29, 2012. Am. Compl. ¶ 18; Bardavid Decl. ¶ 19. The audit revealed that defendant owes $319,451.84 in unpaid contributions. Bardavid Decl. ¶ 20; Poulos Decl. ¶ 18, DE 29.

By letter dated April 24, 2014, the Funds, through its auditor, attempted to audit defendant for the period beginning April 30, 2012. Bardavid Decl. ¶ 28. Defendant failed to respond to this effort. *Id.* at ¶ 29.

Under the Trust Agreement, where defendant fails to submit the required remittance reports and/or the pertinent books and records to the Funds within twenty days of a written demand, the employer shall pay an increased monthly contribution. Cody Decl. ¶ 8, DE 30 (citing Bardavid Decl. Ex. 5 Art. IX, § 1(e)). The increased monthly contribution is computed by adding 10% to the number of hours for the month in the prior twelve months in which the largest number of hours was reported by the employer; the highest hour month is called "base month." *Id.* at ¶ 9. If a previous audit revealed an undisclosed amount of hours for the base month, the Trust Agreement allows the Funds to add 10% to the unreported hours to arrive at the total hours. *Id.* at ¶ 10 (citing Bardavid Decl. Ex. 5 Art. IX, § 1(e)). If the employer submits the required remittance reports, but subsequently fails to provide the pertinent books and records for audit, the Trust Agreement provides that the Funds may compute contributions by multiplying 50% of the number of hours reported for that month by the applicable contribution rate. *Id.* at ¶ 11 (citing Bardavid Decl. Ex. 5 Art. IX, § 1(f)). The total number, once calculated under the above described methods, is then multiplied by the current Fund contribution rates to determine the employer's contribution liability. *Id.* at ¶ 12.

Based upon defendant's failure to respond to an audit for the period beginning April 30, 2012, a senior collections clerk of the Funds conducted an "estimated audit," Audit 14-0490-E1, for April 30, 2012 though August 31, 2014. Bardavid Decl. ¶ 31; Cody Decl. ¶¶ 15-16. The estimated audit revealed that defendant owes a total of $272,158.02 in unpaid contributions. Bardavid Decl. ¶ 33; Cody Decl. ¶ 21.

The Trust Agreement provides that if defendant fails to timely remit contributions or where an audit reveals a delinquency, defendant shall be liable to the Funds for (1) delinquent contributions, (2) interest at a rate of 18% per year from the

first day of the month when the payment was due through the date of payment, (3) an amount equal to the greater of (a) interest on the delinquent contributions, or (b) liquidated damages of 20% of the delinquent contributions, and (4) attorneys' fees and costs. Am. Compl. ¶¶ 13, 17; Bardavid Decl. ¶ 14 (citing Bardavid Decl. Ex. 5 Art. IX, § 3).

## LEGAL STANDARD

### I. Entry of Default

Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend in the action. *Gesualdi v. Pecgro Trucking, Inc.*, No. CV 14-6347(JS)(GRB), 2015 WL 5608149, at *2 (E.D.N.Y. Aug. 13, 2015), *report and recommendation adopted*, No. 14-CV-6347 JS GRB, 2015 WL 5608157 (E.D.N.Y. Sept. 23, 2015) (citing Fed. R. Civ. P. 55). Rule 55 establishes a two-step process for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011); *see also Gesualdi v. Metropolitan Sewer, Inc.*, No. CV 11-6363 (ADS)(ARL), 2016 WL 943533, at *4 (E.D.N.Y. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 953259 (E.D.N.Y. Mar. 11, 2016). First, the Clerk of the Court, upon notification from the moving party, notes the default of the party failing to defend. *Priestley*, 647 F.3d at 504-05 (citing Fed. R. Civ. P. 55(a)). Second, the moving party may seek a judgment under Rule 55(b) by (1) requesting the Clerk of the Court enter judgment for a sum certain or a sum that can be made certain by computation, or (2) requesting relief from the court in all other cases. *Id.* at 505.

Plaintiffs have satisfied the procedural prerequisites to a default judgment. Plaintiffs served the amended complaint upon defendant, a foreign business corporation licensed to do business in New York, via personal delivery to the New York Secretary of State, which constitutes proper service under New York Business Corporation Law § 306. DE 25; *see Pecgro Trucking*, 2015 WL 5608149, at *2. Defendant failed answer or otherwise appear in the action. The Clerk of the Court issued a notation of default on September 16, 2014. DE 10.

### II. Liability

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Liberty Mut. Ins. Co. v. Fast Lane Car Serv.*, 681 F.Supp.2d 340, 346 (E.D.N.Y. 2010) (citation omitted); *see also Lyons P'ship, L.P.*, 702 F. Supp. 2d at 111 (quoting *Leider v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) ("[A]fter [a] default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.")).

The amended complaint sets forth causes of action under Section 515 of ERISA, 29 U.S.C. § 1145, Section 301 of LMRA, 29 U.S.C. § 185(a), and Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement ... [to] make such contributions." *Pecgro Trucking*, 2015 WL 5608149, at *3 (citing 29 U.S.C. § 1145); *Gesualdi v. Mechanical Insulation, Inc.*, No. 14-CV-0724 (JS)(SIL), 2015 WL 729728, at *6 (E.D.N.Y. Feb. 18, 2015). Section 301 of LMRA provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization." *Pecgro Trucking*, 2015 WL 5608149, at *3 (citing 29 U.S.C. § 185(a)). Section 502(a)(3) of ERISA "allows plan participants, beneficiaries or fiduciaries to bring a civil action 'to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or ... obtain other appropriate equitable relief.' " *Levi v. McGladrey LLP*, No. 12-CV-8787 (ER), 2016 WL 1322442, at *5 (S.D.N.Y. Mar. 31, 2016) (quoting 29 U.S.C. § 1132(a)); *see also Ferrara v. A Star Bus. Servs. of N.Y. Corp.*, No. CV 11-5841(JS)(GRB), 2013 WL 1233114, at *5 (E.D.N.Y. Feb. 26, 2013). ERISA defines fiduciaries under 29 U.S.C. § 1002(21)(A). *Id.* at *5.

Here, plaintiffs are trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. § 1002(21)(A). Am. Compl. ¶ 3. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §§ 1002(3), (37), jointly administered by the Board of Trustees, in accordance with Section 302(c)(5) of LMRA, 29 U.S.C. § 186(c)(5). *Id.* at ¶ 4. The CBA and Trust Agreement requires defendant to submit remittance reports, contribute to the Funds, and pay delinquencies revealed by audits. Am. Compl. ¶¶ 10-14; Bardavid Decl. ¶¶ 14, 18. Defendant failed to submit remittance reports, Am. Compl. ¶¶ 16-17, contribute to the Funds, *id.*, and pay delinquencies revealed by audits. *See, e.g.*, Bardavid Decl. ¶¶ 18-26. Furthermore, defendant failed to submit its books and records to an audit for the period beginning April 30, 2012. Am. Compl. ¶¶ 30, 32; Bardavid Decl. ¶¶ 28-29. Therefore, defendant is liable to plaintiffs

under Section 515 of ERISA, 29 U.S.C. § 1145, Section 301 of LMRA, 29 U.S.C. § 185(a), and Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). *Cf. Pecgro Trucking*, 2015 WL 5608149, at *3 (holding that where defendant failed to pay certain contributions as revealed by audits that defendant is liable under ERISA § 515 and LMRA § 301); *A Start Bus. Servs. of N.Y. Corp.*, 2013 WL 1233114, at *5 (holding liability established where plaintiffs allege that they are fiduciaries under 29 U.S.C. § 1002(21)(A), and failed to submit an audit under the Trust Agreement).

## III. Damages

 To establish damages upon a default, the movant needs to prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.* at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatl. Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). It is proper for the Court to "rely on detailed affidavits or documentary evidence ... to evaluate the proposed sum." *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Section 502(g) (2) of ERISA provides:

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or

State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 U.S.C. § 6621].

*Pecgro Trucking*, 2015 WL 5608149, at *4 (citing 29 U.S.C. § 1132(g)(2)); *A Star Bus. Servs. of N.Y. Corp.*, 2013 WL 1233114, at *5 (citing same).

*1. Unpaid contributions*

Section 502(g)(2)(A) of ERISA entitles the Funds to recover monies owed on unpaid contributions. *Pecgro Trucking*, 2015 WL 5608149, at *4; *A Star Bus. Servs. of N.Y. Corp.*, 2013 WL 1233114, at *5. The failure to submit remittance reports, pay contributions, and submit relevant books and records for a periodic audit is a violation of the Trust Agreement. Am. Compl. ¶¶14–16; Bardavid Decl. ¶¶ 14, 18. As explained in a declaration by plaintiffs' auditors, the delinquencies from the audits are calculated based upon procedures set forth in the CBA, which requires defendant to contribute to the Funds at specified hourly rates multiplied by "hours worked" or "hours paid," with certain caps and premium rate requirements. Poulos Decl. ¶ 5. Audit 13-0192 revealed that defendant owes $319,451.84 in unpaid contributions for May 23, 2011 through April 29, 2012. Bardavid Decl. ¶ 20; Poulos Decl. ¶ 18; *cf. Pecgro Trucking*, 2015 WL 5608149, at *4.

Damages based on estimated unpaid contributions are authorized under Section 502 of ERISA. *Mechanical Insulation, Inc.*, 2015 WL 729728, at *7; *see also Ferrara v. Metro D Excavation & Found., Inc.*, No. 10 CV 4215 SLT LB, 2011 WL

3610896, at *8 (E.D.N.Y. July 7, 2011), *report and recommendation adopted*, No. 10-CV-4215 SLT LB, 2011 WL 3625448 (E.D.N.Y. Aug. 16, 2011). Under the Trust Agreement, where defendant fails to submit the required remittance reports and/or the pertinent books and records to the Funds within twenty days of written demand, the employer shall pay an increased monthly contribution based on the formula set forth in the Trust Agreement. Cody Decl. ¶ 8, DE 30 (citing Bardavid Decl. Ex. 5 Art. IX, § 1(e), (f)). Audit 14-0491-E1 revealed estimated unpaid contributions of $272,158.02 for April 30, 2012 through August 31, 2014. Bardavid Decl. ¶ 33; Cody Decl. ¶ 21. Therefore, the undersigned respectfully recommends damages of $591,609.86 in unpaid contributions.

*2. Interest on Unpaid Contributions*

"The amount of interest due for unpaid contributions must be 'determined by using the rate provided under the plan.'" *Pecgro Trucking*, 2015 WL 5608149, at *5; *see also Mechanical Insulation, Inc.*, 2015 WL 729728, at *8. The Trust Agreement provides an interest for unpaid contributions of 18% per year from the first day of the month when the payment was due through the date of payment. Am. Compl. ¶ 13; Bardavid Decl. ¶ 14. The Second Circuit has allowed 18% per year interest rate under ERISA. *Pecgro Trucking*, 2015 WL 5608149, at *5 n.2 (citing *Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors*, 68 F.3d 1502, 1508 (2d Cir. 1995)); *see also Mechanical Insulation, Inc.*, 2015 WL 729728, at *8.

The interest for amounts identified in Audit 13-0192 through September 30, 2014 is $162,286.45. Bardavid Decl. ¶¶ 22–26. For Audit 13-0192, the Funds also seek additional interest that will accrue each day at $157.54 per day commencing October 1, 2014 until payment is made. *See*

Pls.' Br. 16. The interest from Audit 14-0490-E1 from April 30, 2014 through August 31, 2014 is $35,577.27. Bardavid Decl. ¶ 35; Cody Decl. ¶ 23. For Audit 14-0490-E1, the Funds also seek additional interest that will accrue each day at $134.21 per day commencing October 1, 2014 until payment is made. Bardavid Decl. ¶ 35.[2] In similar cases under ERISA and LMRA, courts have interpreted "until the payment is made" language from the Trust Agreement as "until judgment is entered." *See, e.g., Gesualdi v. Seacost Petroleum Products, Inc.,* 97 F. Supp. 3d 87, 102 (E.D.N.Y. 2015); *Mechanical Insulation, Inc.,* 2015 WL 729728, at *8; *Ferrara v. All Am. Trucking Servs., Inc.,* No. CV 11-1157 ADS AKT, 2012 WL 1042936, at *5 (E.D.N.Y. Feb. 17, 2012), *report and recommendation adopted,* No. 11-CV-1157 ADS AKT, 2012 WL 1041840 (E.D.N.Y. Mar. 28, 2012). Therefore, the total interest for Audits 13-0192 and 14-0490-E1 is $197,863.72, plus additional interest at the rate of $291.75 per day commencing October 1, 2014 until judgment is entered.

### 3. Interest on Late Paid Contributions

■ "[A]lthough Plaintiffs are not entitled to interest accrued on late-paid contributions pursuant to ERISA, such redress may be granted where authorized under the CBA or Trust Agreement." *Mechanical Insulation Inc.,* 2015 WL 729728, at *8 n.1; *see also Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship v. VIF Corp.,* No. CV 2014-4923 SJ MDG, 2015 WL 5664140, at *4 (E.D.N.Y. Sept. 4, 2015), *report and recommendation adopted,* (E.D.N.Y. Sept. 24, 2015) ("a contractual

basis exists for recovering interest for untimely contributions under the CBA"); *Pecgro Trucking,* 2015 WL 5608149, at *5. Under the Trust Agreement, defendant's monthly remittances are due on the thirtieth day of each month for all payroll periods during the preceding calendar month, and defendant is required to pay interest from the first day of the month when payment is due up to the date payment is made. Bardavid Decl. Ex. 5 Art. IX, §§ 1(b), 3.

Defendant paid contributions late for March 2012 through August 2012, November 2012, March 2013, April 2013, May 2013, June 2013, July 2013, August 2013, September 2013, and October 2013. Bardavid Decl. ¶¶ 38-42. Pursuant to the Trust Agreement, the total amount of outstanding interest for the above-referenced periods is $13,038.84. *Id.*

### 4. Liquidated Damages

"Section 502(g)(2)(C) of ERISA also provides for additional interest or liquidated damages on unpaid contributions in 'an amount equal to the greater of (i) interest on unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ....'" *Pecgro Trucking,* 2015 WL 5608149, at *5; *see also Mechanical Insulation, Inc.,* 2015 WL 729728, at *9. The Trust Agreement provides that liquidated damages are to be awarded in an amount equal to the greater of interest on unpaid contributions or twenty percent of the unpaid contributions. Bardavid Decl. ¶ 25.

For Audit 13-0192, since the interest calculated through September 30, 2014 is

---

**2.** This report and recommendation has no bearing on whether plaintiffs are entitled to daily interest from September 1, 2014 through October 1, 2014 for Audit 14-0490-E1 as plaintiffs do not request this relief. *Bd. of Trustees of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v.*

*Harbor Island Contracting, Inc.,* No. 13-CV-6075 MKB, 2015 WL 1245963, at *2 (E.D.N.Y. Mar. 16, 2015) ("The Trustees do not pursue this relief in their motion for default judgment, and thus the Court deems this request abandoned.").

greater than 20% of the total unpaid contributions, the Funds seek the liquidated damages equal to the amount of interest through September 30, 2014—$162,286.45. Bardavid Decl. ¶ 25. The undersigned notes that this interest figure was calculated through September 30, 2014, even though interest continues to accrue for Audit 13-0192. *Cf. Mechanical Insulation Inc.*, 2015 WL 729728, at *9. For Audit 14-0491-E1, because 20% of unpaid contributions is greater than the interest that will likely accrue on the unpaid contributions through the date of payment, the Funds seek liquidated damages is of 20% of unpaid contributions—$54,431.60. *Id.* at ¶ 36. Therefore, the total amount of liquidated damages is $216,718.05.

### 5. Audit Fees

"[C]ourts have routinely interpreted § 1132(g)(2)(E) of ERISA to authorize the cost of audits as part of the damages award." *Pecgro Trucking*, 2015 WL 5608149, at *6. The Trust Agreement authorizes audit fees. Bardavid Decl. ¶ 26; Poulos Decl. ¶ 23. The cost of Audit 13-0192 is $2,669.30. Bardavid Decl. ¶ 26. The cost of Audit 14-0491-E1 is $350.00. *Id.* at ¶ 37. Therefore, the total amount for audit fees is $3,019.30.

### 6. Attorneys' Fees and Costs

Under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), "the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Pecgro Trucking*, 2015 WL 5608149, at *6. The Second Circuit and the Supreme Court have recommended using the lodestar method to calculate attorney's fees because it "creates a presumptively reasonable fee." *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183

(2d Cir. 2008)); *see also Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014). This "presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 493 F.3d at 117). The Second Circuit has explained that the lodestar rates should be comparable to those attorneys who perform similar work. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *HVH Enter.*, 2014 WL 923350, at *5.

"Courts in this district have recently approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates, and $70 to $100 for paralegal assistants." *Gesualdi v. Interstate Dev. Grp. Inc.*, No. CV147091ADSARL, 2016 WL 1019243, at *6 (E.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, No. 14CV7091ADSARL, 2016 WL 958236 (E.D.N.Y. Mar. 14, 2016).

Here, although counsel's rates are slightly higher than the upper limits of the approved ranges for ERISA defaults, the undersigned respectfully recommends approving the attorneys' fees. *Cf. Mechanical Insulation, Inc.*, 2015 WL 729728, at *12 (approving attorneys' fees from same counsel where "[t]he prior decisional law of this Court suggests that these rates exceed the upper limits of the approved ranges for such services"). Plaintiffs seek $7,340.25 in attorneys' fees. Bardavid Decl. ¶ 47. The requested hourly rates are $395.00 for partners,[3] $225.00 to $290.00

---

**3.** Jonathan Bardavid describes himself as a

"senior associate," but his hourly rate reflects

for associates, and up to $115.00 for paralegals. Bardavid Decl. ¶¶ 45-46; *see also id.* at Ex. 8. The undersigned notes that even though counsel's hourly rates have increased during the pendency of this litigation, *see* Bardavid Decl. ¶¶ 45-46, and plaintiffs are entitled to current rather than historic rates under Second Circuit case law, *see Lochren v. Cnty of Suffolk*, 344 Fed.Appx. 706, 709 (2d Cir. 2009), plaintiffs only seek the hourly rates charged at the time of the completion of tasks.

Most of the work was done by paralegal Michele Salerno, who has over twenty years of paralegal experience, for 13.7 hours, junior associate Gina Nicotera, a 2013 graduate and a second year associate, for 12.1 hours, and partner Jonathan Bardavid, who has ten years of labor and employment experience, for 6.6 hours. Bardavid Decl. Ex. 8. In a highly similar default judgment motion under ERISA and LMRA with the same counsel, this Court awarded $8,352.25 in attorneys' fees. *Interstate Dev. Grp. Inc.*, 2016 WL 1019243, at *6. Therefore, the undersigned respectfully recommends approving the attorneys' fees of $7,340.25.

Plaintiffs seek costs of $675.26, which consists of filing fee for complaint, cost of service, mailing, and postage. Bardavid Decl. ¶ 47; *see also id.* at Ex. 8. Courts routinely award reasonable costs such as filing fees, service of the complaint, mailing, and postage. *See, e.g., Pecgro Trucking, Inc.*, 2015 WL 5608149, at *7 (awarding $603.91 in costs); *Interstate Dev. Grp. Inc.*, 2016 WL 1019243, at *6 (awarding $617.74 in costs). Therefore, the under-

signed respectfully recommends approving costs of $675.26.

### 7. Injunctive Relief

Plaintiffs seek injunctive relief to (1) compel defendant to submit to an audit for the period beginning April 30, 2012 and pay any delinquencies identified by the audit plus attendant damages, and (2) compel defendant to submit remittance reports and contributions for the period of November 2013 through August 2014. DE 27; Pls.' Br. 16. As set forth above, plaintiffs already seek estimated unpaid contributions from Audit 14-0491-E1 of $272,158.02 for April 30, 2012 through August 31, 2014. Bardavid Decl. ¶ 33; Cody Decl. ¶ 21. Plaintiffs argue that, in addition to monetary damages, they are entitled to an order directing defendant to submit to an audit "to determine the correct amount of contributions to the Funds," and to submit all outstanding remittance reports "so that accurate allocation of contributions due can be made to Defendant's employees." Pls.' Br. 15.

Section 502(a)(3) of ERISA "allows plan participants, beneficiaries or fiduciaries to bring a civil action 'to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or ... obtain other appropriate equitable relief.' " *Levi*, 2016 WL 1322442, at *5; *see also A Star Bus. Servs. of N.Y. Corp.*, 2013 WL 1233114, at *5. Where defendant is in default and where the applicable statute provides for injunctive relief, the court may issue an injunction only where plaintiffs meet the requirements for obtaining equitable relief, such as a showing of irreparable harm should the injunction not be

that of a partner. Pls.' Br. 13. In a highly similar case from 2015, Magistrate Judge Locke noted "although Bardavid's charged rate exceeded the normal range, he 'was the primary lead attorney and had approximately ten years of relevant legal experience,' " and

the Court authorized a rate of $375.00. *Mechanical Insulation, Inc.*, 2015 WL 729728, at *12 (citing *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873 (DRH)(GRB), 2014 WL 1399417, at *8 (E.D.N.Y. Apr. 10, 2014).

granted, and the absence of an adequate remedy at law. *Mechanical Insulation Inc.*, 2015 WL 729728, at \*13; *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 349-50 (E.D.N.Y. 2009). An injunction proves to be difficult where plaintiffs seek both estimated damages and an injunction that defendant submit to an audit for the same period. *See A Star Bus. Servs. of N.Y. Corp.*, 2013 WL 1233114, at \*8 n.3. As the undersigned has noted elsewhere,

> Here, plaintiffs seek *both* estimated damages and an injunction that defendant submit to an audit. Should the Court grant the application in its entirety, and the defendants thereafter comply with the Court's injunction, what then? If the audit reveals vast sums of unclaimed delinquent contributions, do the plaintiffs return to court, seeking to upset a judgment? If the audit instead reveals significantly fewer delinquent contributions than estimated, would that render a judgment based on the estimated sums suspect? Plaintiffs offered no resolution of such issues, and the Court can discern no resolution based on the record.

*Id.*

In *Gesualdi v. Mechanical Insulation Inc.*, plaintiffs sought an injunction ordering defendant to submit to an audit and remittance reports for the period of March 26, 2012 through April 2014, and plaintiffs sought estimated unpaid contributions from an estimated audit for the same period of March 26, 2012 to March 31, 2014. *Mechanical Insulation Inc.*, 2015 WL 729728, at \*7, 13. Magistrate Judge Locke, in a report and recommendation adopted by Judge Seybert, recommended that plaintiffs' request for injunctive relief be denied. *Id.* at \*14. The court denied an injunction for defendant to submit remittance reports because "if the order [Plaintiffs] seek would require [the] employer to do no more than comply with its existing

obligations under the CBA and ERISA, then the lack of injunction cannot possibly subject them to any harm at all, much less irreparable harm." *Id.* at \*13. As to requested order to compel an audit, "[p]laintiffs have not demonstrated that money damages are insufficient to make them whole" because plaintiffs sought damages from an estimated audit of defendant for the same period, and consequently, it does not make sense to issue "an affirmative injunction ordering defendants to submit to an audit for this exact same period of time." *Id.* at \*13, 14.

■ Here, plaintiffs' request for injunctive relief should be denied. As to a request for an injunction to compel defendants to submit remittance reports and contributions, plaintiffs have failed to articulate any irreparable harm in the absence an order because plaintiffs are essentially seeking to require defendant to do no more than comply with its existing obligations under ERISA and LMRA. *Cf. id.* at \*13. As to the request for an order to compel an audit and for defendant to pay attendant damages, plaintiffs have not demonstrated that monetary damages are insufficient to make them whole since plaintiffs elected and sought legal remedy for damages from the estimated audit, and the Court cannot comply with the requirements of equity by issuing an audit for this exact period of time. *Cf. A Star Bus. Servs. of N.Y. Corp.*, 2013 WL 1233114, at \*8 n.3; *Mechanical Insulation Inc.*, 2015 WL 729728, at \*14. Therefore, the undersigned respectfully recommends that plaintiffs' request for injunctive relief be denied.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the (1) renewed motion for default judgment be granted, (2) damages be awarded in the amount of $1,030,265.28 for unpaid contri-

butions, interest, liquidated damages, attorneys' fees and costs, (3) interest be awarded at the rate of $291.74 per day commencing October 1, 2014 until the date judgment is entered, and (4) injunctive relief be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to plaintiff's counsel via ECF. Furthermore, the Court directs plaintiff (1) to serve copies of this Report and Recommendation by overnight mail to defendants at the last known addresses, and (2) to file proof of service on ECF within two days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").